IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAYMOND HILL, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 25-CV-5021 |
| | : | |
| CHESTER COUNTY PRISON, *et al.*, | : | |
|     Defendants. | : | |

**MEMORANDUM**

**PADOVA, J.**                                                                                                                                                                                       **NOVEMBER 17, 2025**

      *Pro se* incarcerated Plaintiff Raymond Hill filed this civil action against Chester County Prison ("CCP"), Prime Care Medical ("Prime Care"), and Aramark Correctional Services ("Aramark"). Hill alleges that the food served to him at CCP has made him ill, and that he has received inadequate care in response. Hill seeks leave to proceed *in forma pauperis* (ECF Nos. 1, 5). For the following reasons, the Court will grant Hill leave to proceed *in forma pauperis*, dismiss his claims against CCP and Prime Care, and permit his federal claim against Aramark to proceed.

**I.     FACTUAL ALLEGATIONS**[1]

      Hill is incarcerated at CCP as a pretrial detainee. (Compl. at 3.) Hill alleges that since June 2024, he has been injured by the "tainted toxic food" served to inmates at CCP. (*Id*. at 2.) He first experienced illness in June 2024 when he suffered severe stomach pain, bloody stools, stomach distention, high blood pressure, pain in the joints, blurry vision, night sweats, vomiting,

---

[1] The factual allegations in this Memorandum are taken from Hill's handwritten Complaint and attachments (ECF No. 2). The Court deems the entire submission to constitute the Complaint and adopts the pagination supplied by the CM/ECF docketing system. Where the Court quotes from the Complaint, punctuation, spelling, and capitalization errors will be cleaned up as needed.

and blood coming from his rectum. (*Id*.)  When he asked another inmate if he felt sick also, the inmate responded that Hill should get used to it because the food CCP serves, especially the meat, is "toxic." (*Id*. at 3.)  The inmate, Tim Vause, who formerly worked in the kitchen under C/O Massey, told Hill that the meat packaging contains a warning that it causes cancer. (*Id*.)  The inmate also allegedly revealed that an Aramark employee was fired for leaving meat out overnight and then serving it the next day. (*Id*. at 3-4)

      Hill submitted a sick call request and explained his symptoms. (*Id*. at 3.)  He was given Tylenol and returned to his cell. (*Id*.)  He felt better for two weeks, but then the illness returned. (*Id*. at 4.)  He noticed blood in his underwear and had bloody diarrhea. (*Id*.)  Hill called C/O Mehn to his cell, and the officer immediately called the medical unit. (*Id*.)  Once at the medical unit, Hill explained his symptoms to the physician's assistant, who allegedly told a nurse outside the door "we got another one." (*Id*.)  Hill claims that she told him the food, and especially the meat, were to blame and that his health would benefit from fasting from the meals "as much as humanly possible." (*Id*.)  After Hill returned to his housing unit, he collected stool samples requested by the medical unit and returned them via the nurse that comes to the block daily. (*Id*.)  He never heard anything back regarding the results, his illness, or treatment. (*Id*. at 4-5.)

      He later submitted another sick call slip and stayed in the medical unit for four days because his vital signs were so high. (*Id*. at 5.)  Hill was released back to his housing unit and told that nothing was wrong with his health. (*Id*.)  He reached out to the Prison Society for help, and they apparently visited CCP. (*Id*.)  According to Hill, they told him that they had received "numerous complaints about a sickness from the meat." (*Id*.)  Hill alleges that the Chester County Health Department "was called due to the illness." (*Id*.)  The Health Department issued surveys for prisoners to complete to "help [it] find the potential source of this illness" for

September 30 and October 1, 2024. (*Id*. at 5, 11-12.) Hill alleges that he submitted multiple grievances to the prison about the toxic food but has not received any response. (*Id*. at 5.)

Hill maintains that he continues to be ill and the only time that he is not is when he fasts from eating the food. (*Id*.) He states, "I am sick as I write this letter." (*Id*.) Hill alleges that he continues to experience all the symptoms except the blood in his stool, including headache, blurry vision, numbness in his hands and legs, hip pain, testicle pain, shortness of breath, stomach distension, joint pain, vomiting, diarrhea and severe abdominal cramping. (*Id*. at 6.) He contends that, "[s]ome days I cannot get out of the bed and the medical unit (PA) told me the food is the source of the illness and keeps telling me nothing is wrong with me." (*Id*.)

Hill filed this Complaint in August 2025 pursuant to 42 U.S.C. § 1983 alleging constitutional and state law claims. (*Id*. at 1.) As relief, he requests release from custody and damages.[2] (*Id.* at 6.)

## II. STANDARD OF REVIEW

The Court will grant Hill leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[3] Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the complaint if, among other things, it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to

---

[2] To the extent Hill seeks his release, such relief is not appropriately sought in a civil rights action. *See Garrett v. Murphy*, 17 F.4th 419, 430 (3d Cir. 2021) ("[W]henever a plaintiff pleads a violation of § 1983 and effectively seeks habeas relief, the plaintiff fails to state a § 1983 claim. Instead, the prisoner's only federal remedy is through a writ of habeas corpus after exhausting state remedies.").

[3] However, as Hill is a prisoner, he will be obligated to pay the $350 filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

3

determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

As Hill is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 245). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.*

**III.   DISCUSSION**

Hill's Complaint expressly raises claims for violations of the Fourteenth and Eighth Amendments under federal law and medical malpractice under state law.[4] (Compl. at 1.) Specifically, the Court understands Hill to challenge the conditions of his confinement due to the allegedly "toxic food" served by Aramark and a deliberate indifference to his medical needs by Prime Care. The vehicle by which federal constitutional claims may be brought in federal court is an action under 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v.*

---

[4] Hill alleges that he is a pretrial detainee (Compl. at 3), and thus the Fourteenth Amendment, and not the Eighth Amendment, governs his claims alleging deliberate indifference. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). However, the standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's confinement is essentially the same for purposes of the analysis. *See Parkell v. Morgan*, 682 F. App'x 155, 159-60 (3d Cir. 2017) (*per curiam*) (citations omitted).

*Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

### A. Federal Claim Against CCP

Hill names CCP as a Defendant, but it is not a proper defendant in this § 1983 action. The Court must dismiss any claims asserted against CCP because a jail or correctional facility is not a "person" under § 1983. *Edwards v. Bucks Cty. Corr. Facility*, No. 19-4923, 2019 WL 5579486, at *2 (E.D. Pa. Oct. 29, 2019) ("County jails are not 'persons' that are 'subject to suit under federal civil rights laws'" and thus, "Bucks County Correctional Facility is not an entity susceptible to suit under § 1983."); *Cephas v. George W. Hill Corr. Facility*, No. 09-6014, 2010 WL 2854149, at *1 (E.D. Pa. July 20, 2010). Hill's federal claims against CCP will be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### B. Federal Claim Against Aramark

Prison officials have a constitutional duty to provide "humane conditions of confinement," including "adequate food, clothing, shelter, and medical care," and "'must take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 832-33 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526–527 (1984)) (citations omitted). The Constitution requires that prisoners "be served 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger' to their health and well-being." *Duran v. Merline*, 923 F. Supp. 2d 702, 720 (D.N.J. 2013) (quoting *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983)) (citation omitted). "[P]rison officials may violate the [Constitution] by serving unsanitary, spoiled or contaminated food if the prisoner also alleges

5

that he or she suffered a distinct and palpable injury." *DeJesus v. Carey*, Civ. A. No. 15-2504, 2016 WL 6134540, at *3 (M.D. Pa. Oct. 20, 2016) (quoting *Robles*, 725 F.2d at 15) (citing *Escobar v. Mora*, 496 F. App'x 806, 810-11 (10th Cir. 2012) (concluding that inmate stated a plausible claim by alleging that he lost thirty pounds and suffered psychological and mental injury because an officer spit in food)).

"In order for a private company such as Aramark to be liable under 42 U.S.C. § 1983, Aramark must have known of and 'acquiesced in the deprivation of plaintiffs' rights.'" *Hart v. City of Philadelphia*, Civ. A. No. 13-6661, 2017 WL 3485893, at *2 (E.D. Pa. Aug. 14, 2017) (quoting *Miller v. Hoffman,* 1998 WL 404034, at *5 (E.D. Pa. July 7, 1998)).  Hill "must allege that Aramark 'established and maintained a policy, practice or custom which directly caused [his] constitutional harm' with 'deliberate indifference to the consequences.'"[5] *Id.* (alteration in original) (quoting Miller v. Hoffman, Civ. A. No. 97-7987, 1998 WL 404034, at *5 (E.D. Pa. July 7, 1998)).  In the context of an alleged failure to provide a proper diet, "[u]nconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007).  "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (internal quotations and alterations omitted).  Whether the deprivation of food is objectively serious for purposes of establishing a

---

[5] "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).  "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id*. (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

constitutional violation "depends on the amount and duration of the deprivation." *Duran*, 923 F. Supp. 2d at 720 (quotation omitted). To satisfy the subjective component of the analysis, a prisoner generally must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991); *see also Edwards v. Northampton Cnty.*, 663 F. App' x 132, 135 (3d Cir. 2016) (*per curiam*) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)).

Hill has adequately alleged an objectively serious deprivation. He claims that since June 2024, he has experienced frequent stomach illnesses because of the foods being served by Aramark, in particular, the meat that is served. (Compl. at 3, 5.) He allegedly suffers from symptoms including blood in his stools, vomiting, stomach distension, diarrhea, and severe abdominal cramping. (*Id.* at 6.) He claims that other inmates have suffered from food poisoning, as allegedly confirmed by the physician's assistant in the medical unit, the Prison Society, and the Chester County Health Department. (*Id.* at 4-5.) Hill avers that another inmate who formerly worked in the kitchen claimed that the meat packaging contained a warning that it may cause cancer. (*Id.* at 3.) Hill has been warned by another inmate and by the physician's assistant to avoid eating the food when possible. (*Id.* at 4.)

Hill also alleges facts supporting an inference of deliberate indifference as to Aramark at this early stage of the litigation. Specifically, he avers that, prior to the onset of his illness in June 2024, a former Aramark employee allegedly left meat out overnight and then served it the following day. (*Id.* at 3.) Aramark apparently became aware of the problem because the employee was allegedly fired. (*Id.*) Hill alleges that he subsequently suffered numerous health

effects, many of which were observed by medical and corrections staff (*id*. at 4-6), and medical staff at the prison knew enough about the situation to observe that he was "another one" and advised him to avoid the food to the extent possible (*id*. at 4). He claims to have filed multiple grievances about the toxic food and, when he contacted the Prison Society, they told him they had received "numerous complaints about a sickness from the meat." (*Id*. at 5.) Hill further alleges that the Chester County Health Department "was called due to the illness" (*id*. at 5), and it provided inmates with a survey to "help the Health Department find the potential source of this illness" by identifying the foods eaten which had served by Aramark on September 30 and October 1, 2024 (*id*. at 11-12). These facts as alleged by Hill may be taken together to infer that Aramark acquiesced in providing food that compromised inmates' safety. *See Phillips v. Superintendent Chester SCI*, 739 F. App'x 125, 129 (3d Cir. 2018) (*per curiam*).

Construed liberally, these allegations state a plausible claim that Hill was denied adequate nutritional food, and he will be permitted to proceed on the deliberate indifference claim against Aramark. *See Philips*, 739 F. App'x at 129-30 & n.8 (vacating and remanding for plaintiff's claim to proceed where he alleged that prison officials knew of the excessive risk of serving him "non-complaint foods" but disregarded that risk); *Stone v. Aramark, Inc.*, Civ. A. No. 20-428, 2022 WL 124650, at *2 (N.D. Ind. Jan. 13, 2022) (finding deliberate indifference claim against food preparer to be plausible where prisoner alleged that meals served within a period of eight months often contained spoiled or rotten food, which caused him food poisoning, stomach pain, vomiting, and diarrhea); *Gonzalez v. Neal*, Civ. A. No. 22-316, 2022 WL 3368811, at *2 (N.D. Ind. Aug. 16, 2022) (finding deliberate indifference claims to be plausible where prisoner alleged "he was served spoiled and contaminated meals for a period of several months, during which time he often went hungry"); *Drennon v. A.B.L.*, Civ. A. No. 06-126, 2006

WL 3448686, at *1-2 (M.D. Tenn. Nov. 27, 2006) (permitting prisoner to proceed with Eighth Amendment claims based on allegations that poor food quality caused him to experience weight fluctuations, stomach viruses, diarrhea, and constipation).

### C.  Federal Claim Against Prime Care

The deliberate indifference claim against Prime Care cannot proceed as currently pleaded.  A private corporation under contract to provide medical services at a jail or prison may be liable under § 1983 in certain circumstances.  The United States Court of Appeals for the Third Circuit has held that "a private health company providing services to inmates 'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.'"  *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (quoting *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003)) (applying *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978), to claims against medical contractor)).  Rather, to plead a § 1983 claim against a prison medical provider, a plaintiff must allege the provider had "a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s]."  *Natale*, 318 F.3d at 583-84 (citing *Bd. of the Cnty. Comm'rs of Bryan Cnty., Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)).  "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was."[6]  *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) (citation omitted).  It is not enough, however, to allege the existence of a policy or a custom.  "A plaintiff must also allege that the policy or custom was the

---

[6] In the context of a contract medical provider, the provider's "failure to train or supervise must amount to a policy or custom in disregard of an obvious risk that its employees or agents would commit constitutional violations." *Ponzini v. Prime Care Med., Inc.*, 269 F. Supp. 3d 444, 526 (M.D. Pa. 2017), *aff'd in part, vacated in part on other grounds sub nom. Ponzini v. Monroe Cnty.*, 789 F. App'x 313 (3d Cir. 2019).  Hill has not alleged that he was injured due to a failure to supervise, train, or discipline.

'proximate cause' of his injuries." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).

Hill has not tied his allegations of deliberate indifference to a custom or policy of Prime Care. In fact, he has not referenced any policy or custom by Prime Care in his Complaint. Hill instead makes factual claims concerning his care by an unidentified physician's assistant and nurses in the Medical Unit. (Compl. at 3-6.) Because Prime Care cannot be held liable under a *respondeat superior* theory for the actions of its employees, *see Sims*, 635 F. App'x at 20, the allegations are insufficient to allege a plausible claim against Prime Care. *Lomax v. City of Philadelphia*, Civ. A. No. 13-1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017) ("Because [defendant] is a private company contracted by a prison to provide health care for inmates, . . . it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs." (citations and quotations omitted)).

### D. State Law Claim for Medical Malpractice

The Court understands Hill to assert a medical malpractice claim against Prime Care. To state a claim for medical malpractice under Pennsylvania law, a plaintiff must allege: "(1) the [medical professional] owed a duty to the patient; (2) the [medical professional] breached the duty; (3) the breach was the proximate cause of the harm suffered; and (4) the damages suffered were a direct result of the harm." *Brown v. Hahnemann Univ. Hosp.*, 20 F. Supp. 3d 538, 542 (E.D. Pa. 2014) (citing *Hightower-Warren v. Silk*, 698 A.2d 52, 54 (Pa. 1997)). "Put differently, 'to prevail on a claim of medical negligence under Pennsylvania state law, the plaintiff must prove, *inter alia*, that the defendant's treatment fell below the appropriate standard of care—that is, varied from accepted medical practice.'" *Cramer v. Prince*, Civ. A. No. 23-1988, 2024 WL

4109335, at *8 (M.D. Pa. Sept. 6, 2024) (quoting *Mitchell v. Shikora*, 209 A.3d 307, 314-15 (Pa. 2019)). Under state law, a plaintiff may pursue medical negligence claims against medical corporations for medical malpractice and vicarious liability. *Kinney v. Cnty. of Berks*, Civ. A. No. 22-2566, 2025 WL 270055, at *17 (E.D. Pa. Jan. 21, 2025) (citing *Thompson v. Nason*, 591 A.2d 703, 708 (Pa. 1991*)* (medical malpractice); *Valles v. Albert Einstein Med. Ctr.*, 758 A.2d 1238, 1244 (Pa. Super. 2000) (vicarious liability)).

Hill recounts several visits to the medical unit while he allegedly had symptoms after eating the prison food. (Compl. at 3-6.) On his initial visit, he says that the staff gave him Tylenol and the illness stopped. (*Id*. at 3.) Two weeks later, the illness returned, and Hill visited the medical unit, where he was seen by the physician's assistant. (*Id*. at 4.) The physician's assistant diagnosed his illness as being attributable to the food and advised that he avoid it, especially the meat, "as much as humanly possible." (*Id*.) Hill claims that he submitted stool samples to the nurse who makes daily rounds but he did not hear back about the results. (*Id*. at 4-5.) He returned to the medical unit when his vital signs were high and the staff kept him there for four days. (*Id*. at 5.) He contends that the illness is ongoing and the physician's assistant has allegedly continued to confirm that his symptoms were attributable to the poor food quality at the prison and not to anything related to his health. (*Id.* at 6 (stating that the physician's assistant told Hill "the food is the source of the illness and . . . nothing is wrong with [him].").)

Through these allegations, Hill does not allege any standard of care for treatment that medical staff breached when they cared for him during his bouts with alleged food-related illness; rather, they instead support Hill's claim throughout his Complaint that his illnesses were caused solely by the "toxic food" at the prison. *Brown*, 20 F. Supp. 3d at 542 (requiring allegations that the medical professional breached a duty of care). Further, Hill's allegations do

not allege a plausible claim against Prime Care under Pennsylvania's corporate malpractice under Pennsylvania law.[7] Accordingly, the state law medical malpractice claim cannot proceed and will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Hill leave to proceed *in forma pauperis* and dismiss his federal claims against Defendant CCP with prejudice, the federal claim against Defendant Prime Care without prejudice, and the state law malpractice claim against Prime Care without prejudice. The federal claim for deliberate indifference against Aramark will be allowed to proceed at this time. The relief sought in Hill's submissions at ECF Nos. 6 and 9 will be denied.[8]

---

[7] *See Robinson v. Corizon Health, Inc.*, Civ. A. No. 12-1271, 2016 WL 7235314, at *14 (E.D. Pa. Dec. 13, 2016) (explaining a hospital may be liable under a corporate malpractice theory if it breached "(1) a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment; (2) a duty to select and retain only competent physicians; (3) a duty to oversee all persons who practice medicine within its walls as to patient care; and (4) a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for the patients" (citing *Thompson*, 591 A.2d at 707)); *see also Thompson*, 591 A.2d at 708 ("The hospital's negligence must have been a substantial factor in bringing about the harm to the injured party." (citing *Hamil v. Bashline,* 481 Pa. 256, 392 A.2d 1280 (1978)).

[8] In ECF Nos. 6, 9, and 10, Hill seeks to amend his damages claims and to add a party. Hill cannot proceed in this fashion because the Federal Rules of Civil Procedure do not contemplate piecemeal pleadings or the amalgamation of pleadings, even in the context of a *pro se* litigant. *See Bryant v. Raddad*, Civ. A. No. 21-1116, 2021 WL 2577061, at *2 (E.D. Pa. June 22, 2021) ("Allowing a plaintiff to file partial amendments or fragmented supplements to the operative pleading, 'presents an undue risk of piecemeal litigation that precludes orderly resolution of cognizable claims.'" (quoting *Uribe v. Taylor*, Civ. A. No. 10-2615, 2011 WL 1670233, at *1 (E.D. Cal. May 2, 2011)); *Brooks-Ngwenya v. Bart Peterson's the Mind Tr.*, Civ. A. No. 16-193, 2017 WL 65310, at *1 (N.D. Ind. Jan. 6, 2017) ("Piecemeal pleadings cause confusion and unnecessarily complicate interpretation of a movant's allegations and intent . . . ."). If Hill seeks to amend his complaint, he must do so consistent with the Court's order. Notably, he has not alleged any factual basis for a claim against the Warden in his request to amend.

Hill will be given the option of proceeding on his remaining claim or filing an amended complaint in the event he seeks to amend his claims against Defendant Prime Care. An appropriate Order follows, which provides further guidance for proceeding.

                                 **BY THE COURT:**

                                 /s/ John R. Padova, J.

                               **JOHN R. PADOVA, J.**