## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RAYMOND HILL,                **:**
    **Plaintiff,**           **:**
                          **:**
    **v.**                    **:**        **CIVIL ACTION NO. 25-CV-5021**
                          **:**
CHESTER COUNTY PRISON, *et al.*,  **:**
    **Defendants.**          **:**

## MEMORANDUM

**PADOVA, J.**                                            **FEBRUARY 19, 2026**

*Pro se* incarcerated Plaintiff Raymond Hill filed this civil action against Chester County Prison ("CCP"), Prime Care Medical ("Prime Care"), and Aramark Correctional Services ("Aramark") concerning the food and medical care provided at CCP. (ECF No. 2.) The Court granted Hill leave to proceed *in forma pauperis,* dismissed all claims except his federal claim against Aramark, and allowed Hill to file an amended complaint. *Hill v. Chester Cnty. Prison*, Civ. A. No. 25-5021, 2025 WL 3210368, at *6 (E.D. Pa. Nov. 17, 2025). Hill filed an Amended Complaint realleging claims against Aramark and adding claims against Chester County Prison Warden Howard Holland, C/O Massey, Aramark Correctional Service Workers Jane and John Doe, the Commonwealth of Pennsylvania, and Chester County.[1] (ECF No. 14 at 2-3, 23.) For the following reasons, the Amended Complaint will be dismissed in part and permitted to proceed against Aramark, Massey, Chester County, and Warden Holland.

---

[1] Because he had concerns about his incoming and outgoing mail at the prison, Hill subsequently filed a duplicate of the Amended Complaint, which was also docketed as "Amended Complaint." (*See* ECF No. 15.) The duplicate filing (ECF No. 15) will be stricken from the docket.

I.      **FACTUAL ALLEGATIONS**[2]

Hill is incarcerated at CCP as a pretrial detainee.  (Am. Compl. at 2, 4.)  He alleges that he suffered illness between June and December 2024 due to "an ongoing situation of food poisoning" at CCP.  (*Id.* at 13-15.)  Defendant Aramark runs the food preparation, cooking, service, and inspection at CCP.  (*Id*. at 13.)  Aramark has several employees who work inside the prison with both prisoners and Defendant Massey, who is a corrections officer and kitchen supervisor.  (*Id*.)  Hill claims that "all Defendants" have a common practice of leaving cooked and uncooked food out overnight and serving it to inmates the next day.  (*Id*.)

Hill first experienced symptoms in June 2024, when he suffered severe stomach pain, bloody stools, stomach distention, high blood pressure, pain in his joints, blurry vision, night sweats, vomiting, and blood from his rectum.  (*Id*. at 15.)  When he asked another inmate if he felt sick also, the inmate responded that Hill should get used to it because the food CCP serves, especially the meat, is "toxic."  (*Id*.)  The inmate, Tim Vause, who formerly worked in the kitchen under Massey's direction, told Hill that the meat packaging contains a warning that it causes cancer.  (*Id*. at 17.)  The inmate also told Hill that an Aramark employee was fired for leaving meat out overnight without refrigeration and then serving it the next day, which Vause claimed was a common practice.  (*Id*.)

Hill submitted a sick call request and explained his symptoms.  (*Id*.)  He was given Tylenol and returned to his cell.  (*Id*.)  He felt better for two weeks, but then the illness returned.  (*Id*.)  He noticed blood in his underwear and had bloody diarrhea.  (*Id*.)  Hill called C/O Mehn to

---

[2] The factual allegations in this Memorandum are taken from Hill's Amended Complaint and attachments ("Am. Compl.").  (ECF No. 14.)  The Court adopts the pagination supplied by the CM/ECF docketing system.  Where the Court quotes from the Complaint, punctuation, spelling, and capitalization errors will be cleaned up as needed.

his cell, and the officer immediately called the medical unit. (*Id.*) Once there, Hill explained his symptoms to the physician's assistant, who allegedly told a nurse outside the door "we got another one." (*Id.*) Hill claims that she told him the food, and especially the meat, were to blame, and that his health would benefit from fasting from the meals "as much as humanly possible." (*Id.* at 17-19.) He was told to collect stool samples and return them via the nurse that comes to the block daily. (*Id.* at 19.) For a week, he heard nothing back regarding the results, his illness, or treatment. (*Id.*)

His symptoms continued, so he submitted another sick call slip. (*Id.*) He stayed in the medical unit for four days because his vital signs were so high. (*Id.*) When he was released back to his housing unit, Hill reached out to the Prison Society for help, and they apparently visited CCP. (*Id.*) According to Hill, they told him that they had received "numerous complaints about a sickness from the food." (*Id.*) Hill alleges that the Chester County Health Department was called onsite "due to the prison wide illness" and gave him a form to complete. (*Id.* at 15, 19.) The form asked inmates to "help the Health Department find the potential source of this illness" by identifying the foods eaten that had been served by Aramark on September 30 and October 1, 2024. (*Id.* at 29-30.) He states that his illness stopped when he fasted from eating the meat. (*Id.* at 15.) Hill alleges that Aramark continues to serve toxic meat that causes health problems. (*Id.* at 13.)

Hill states that he submitted multiple grievances to the prison about the toxic food but did not receive a response, which prompted him to contact the Prison Society. (*Id.* at 19-21.) He asserts that Warden Holland knows about the food poisoning and health issues "[b]ecause there ha[ve] been 8 federal lawsuits over the past 36 months with Chester County Prison and Aramark correctional services listed as lead defendants along with C/O Massey as well." (*Id.* at 13-15.)

Hill filed this lawsuit in August 2025 pursuant to 42 U.S.C. § 1983 alleging constitutional and state law claims.  (ECF No. 2.)  After the initial Complaint except the federal claim against Aramark was dismissed, Hill filed this Amended Complaint in which he seeks to add claims against additional defendants.  He again alleges that he experienced symptoms of food poisoning illness while eating and has suffered embarrassment and ridicule from other inmates when he defecated on himself in the chow area.  (Am. Compl. at 21.)  As relief in this lawsuit, he requests a new menu of food at CCP without toxic meat, frequent kitchen inspections, testing of the meat that previously caused prison-wide illness by an outside laboratory, and for all Defendants to be terminated from their jobs at CCP.[3]  (*Id.* at 5.)  He also requests $5 million in damages.  (*Id.*)

## II.   STANDARD OF REVIEW

Because Hill was granted leave to proceed *in forma pauperis*, the Court must review the Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and dismiss it if, among other things, it fails to state a claim.  Whether an amended complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the amended complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

---

[3] The Court lacks the authority to order any of the Defendants to be terminated from their positions at CCP.  *Hall v. Carny*, Civ. A. No. 22-4094, 2023 WL 187569, at *1 n.3 (E.D. Pa. Jan 13, 2023) (dismissing with prejudice request that defendant's employment be terminated); *Buskirk v. Pennsylvania Bd. of Prob. & Parole*, Civ. A. No. 22-1826, 2022 WL 4542094, at *2 n.4 (E.D. Pa. Sept. 28, 2022) (stating "the Court has no authority to terminate the employment of a state employee").  The request for that relief will thus be dismissed with prejudice.

4

As Hill is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* (quoting *Mala*, 704 F.3d at 244). However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 245). Unrepresented litigants "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.* (quoting *Mala*, 704 F.3d at 245).

## III.    DISCUSSION

Hill asserts that his claims under 42 U.S.C. § 1983 arise under the First, Eighth, and Fourteenth Amendments.[4] (Am. Compl. at 3.) The Court understands Hill to challenge the conditions of his confinement due to the allegedly "toxic food" served by Aramark, the Jane and John Doe Aramark employees, and Massey, and the alleged deliberate indifference of Warden Holland to his conditions of confinement. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

---

[4] As a pretrial detainee, the Fourteenth Amendment, and not the Eighth Amendment, governs his claims alleging deliberate indifference. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). As best the Court can tell, Hill's Amended Complaint does not allege facts supporting a First Amendment claim.

A.      **Defendant Commonwealth of Pennsylvania**

Hill seeks to name the Commonwealth of Pennsylvania as a Defendant in his Amended Complaint.  (*See* Am. Compl. at 23.)  As a factual matter, however, Hill has not pleaded any allegations against the Commonwealth of Pennsylvania.  Even if he had, any claims against the Commonwealth of Pennsylvania would necessarily be dismissed because states are not considered "persons" for purposes of § 1983.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989).  Furthermore, the Eleventh Amendment bars federal suits seeking money damages against a state and its agencies.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Pub. Schs.*, 341 F.3d 234, 238 (3d Cir. 2003).  The Commonwealth of Pennsylvania has not waived that immunity.  *See* 42 Pa. Cons. Stat. § 8521(b).  The claim against the Commonwealth will be dismissed with prejudice.  28 U.S.C. § 1915(e)(2)(B)(ii).

B.      **Conditions of Confinement – Nutritionally Adequate Food**

Prison officials have a constitutional duty to provide "humane conditions of confinement," including "adequate food, clothing, shelter, and medical care," and "must 'take reasonable measures to guarantee the safety of the inmates.'"  *Farmer v. Brennan*, 511 U.S. 832-33 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)) (citations omitted).  The Constitution requires that prisoners "be served 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger' to their health and well-being."  *Duran v. Merline*, 923 F. Supp. 2d 702, 720 (D.N.J. 2013) (quoting *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (*per curiam*) (citation omitted).  "[P]rison officials may violate the [Constitution] by serving unsanitary, spoiled or contaminated food if the prisoner also alleges that he or she suffered a distinct and palpable injury."  *DeJesus v. Carey*, Civ. A. No. 15-2504,

2016 WL 6134540, at *3 (M.D. Pa. Oct. 20, 2016) (quoting *Robles*, 725 F.2d at 15) (citing

*Escobar v. Mora*, 496 F. App'x 806, 810-11 (10th Cir. 2012) (concluding that inmate stated a

plausible claim when he alleged that he lost thirty pounds and suffered psychological and mental

injury because an officer spit in food)).

"In order for a private company such as Aramark to be liable under 42 U.S.C. § 1983,

Aramark must have known of and 'acquiesced in the deprivation of plaintiffs' rights.'" *Hart v.*

*City of Philadelphia*, Civ. A. No. 13-6661, 2017 WL 3485893, at *2 (E.D. Pa. Aug. 14, 2017)

(quoting *Miller v. Hoffman,* Civ. A. No. 97-7987, 1998 WL 404034, at *5 (E.D. Pa. July 7,

1998)).  Hill must "allege that Aramark 'established and maintained a policy, practice or custom

which directly caused [his] constitutional harm' with 'deliberate indifference to the

consequences.'"[5]  *Id.* (alteration in original) (quoting *Miller*, 1998 WL 404034, at *5).  In the

context of an alleged failure to provide a proper diet, "[u]nconstitutional punishment typically

includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d

Cir. 2007).  "[T]he objective component requires an inquiry into whether the deprivation was

sufficiently serious and the subjective component asks whether the officials acted with a

sufficiently culpable state of mind."  *Id.* (internal quotation and alterations omitted).  Whether

the deprivation of food is objectively serious for purposes of establishing a constitutional

violation "depends on the amount and duration of the deprivation."  *Duran*, 923 F. Supp. 2d at

---

[5] "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).  "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id*. (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

720 (quoting *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999)).  To satisfy the subjective

component of the analysis, a prisoner generally must assert that prison officials acted with

deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's

health or safety.  *See Wilson v. Seiter*, 501 U.S. 294, 298-99; *see also Edwards v. Northampton

Cnty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (*per curiam*) ("[W]e agree with the District Court

and find no reason to apply a different standard here as we have applied the

'deliberate indifference' standard both in cases involving prisoners and pretrial detainees."

(internal citations omitted)).

### 1.  Aramark and Massey

Hill has adequately alleged an objectively serious deprivation.  He claims that between

June and December 2024, he experienced frequent stomach illnesses because of the foods being

served by Aramark.  (Am. Compl. at 15, 19.)  Hill allegedly suffered from symptoms including

blood in his stools, vomiting, stomach distension, diarrhea, and severe abdominal cramping, and

claims the illness stopped when he stopped eating the meat.  (*Id*. at 15.)  He claims that other

inmates have suffered from food poisoning, as allegedly confirmed by inmate Vause, the

physician's assistant in the medical unit, the Prison Society, and the Chester County Health

Department.  (*Id*. at 7, 15-19.)  Hill alleges that Vause also stated that the meat packaging

contained a warning that it may cause cancer.  (*Id*. at 15-17.)  Hill was warned by Vause and the

physician's assistant to avoid eating the food when possible.  (*Id*. at 17-19.)

Hill also alleges facts supporting an inference of deliberate indifference as to both

Aramark and Massey at this early stage of the litigation.  Specifically, he avers that, prior to the

onset of his illness in June 2024, a former Aramark employee allegedly left meat out overnight

and then served it the following day.  (*Id*. at 17.)  Aramark apparently became aware of the

8

problem because the employee was allegedly fired.  (*Id*.)  Hill suffered numerous health effects, many of which were observed by medical and corrections staff (*id*.), and medical staff at the prison knew enough about the situation to observe that he was "another one" and advised him to avoid the food to the extent possible (*id*. at 17-19).  He claims to have filed multiple grievances about the toxic food that went unacknowledged, and, when he contacted the Prison Society, they told him they had received "numerous complaints about a sickness from the food."  (*Id*. at 19.) Hill further alleges that the Chester County Health Department "was called due to the prison wide illness" (*id*.), and that it gave inmates a survey to "help the Health Department find the potential source of this illness" by identifying the foods eaten that had served by Aramark on September 30 and October 1, 2024.  (*Id*. at 29-30.)  Taken together, these allegations give rise to a reasonable inference that Aramark and Massey, who allegedly worked with Aramark employees and was a supervisor in CCP's kitchen, acquiesced in providing food that compromised inmates' safety.  *See Phillips v. Superintendent Chester SCI*, 739 F. App'x 125, 129 (3d Cir. 2018) (*per curiam*); *Velez-Santiago v. Aramark Corr. Servs.*, Civ. A. No. 25-563, 2025 WL 1094256, at *7 (E.D. Pa. Apr. 11, 2025) (permitting Fourteenth Amendment claim against Aramark and Massey for serving contaminated food to proceed); *Stone v. Aramark, Inc.*, No. 20-CV-428, 2022 WL 124650, at *2 (N.D. Ind. Jan. 13, 2022) (finding deliberate indifference claim against food preparer to be plausible where prisoner alleged that meals served within a period of eight months often contained spoiled or rotten food, which caused him food poisoning, stomach pain, vomiting, and diarrhea); *Gonzalez v. Neal*, Civ. A. No. 22-316, 2022 WL 3368811, at *2 (N.D. Ind. Aug. 16, 2022) (finding deliberate indifference claim to be plausible where prisoner alleged that "he was served spoiled and contaminated meals for a period of several months, during which time he often went hungry"); *Drennon v. A.B.L.*, Civ. A. No.

9

06-126, 2006 WL 3448686, at *2 (M.D. Tenn. Nov. 27, 2006) (permitting prisoner to proceed with Eighth Amendment claims based on allegations that poor food quality caused him to experience weight fluctuations, stomach viruses, diarrhea, and constipation).  Plaintiff's claims against Aramark and Massey thus survive the § 1915(e)(2)(B) review.

### 2.  Aramark employees Jane/John Does

As noted above, in a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims.  *See Rode*, 845 F.2d at 1207; *see also Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  Hill makes no specific allegations against any particular Jane or John Does in the Amended Complaint.  Rather, Hill merely alleges that Aramark has "several employees that work inside the prison alongside prisoners[,] and C/O Massey works with them as well."  (Am. Compl. at 13.)  There are no allegations that the Jane and John Doe employees personally participated in the specific events alleged to give rise to Hill's claims, and the broad, generic reference to "employees" does not plausibly allege personal involvement necessary for constitutional violations under § 1983.  The claims against the Jane and John Does will be dismissed without prejudice.

### 3.  Warden Holland

To state a claim against Warden Holland, Hill must allege how the Warden was involved in the events and occurrences giving rise to Hill's claim.  Claims "against high-level government officials must satisfy the general requirements for supervisory liability."  *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017).  "'[A] supervisor may be personally liable under § 1983 if he

10

or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced' in the subordinate's unconstitutional conduct." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)) (citation omitted), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Rode*, 845 F.2d at 1207; *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020). "Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1194 (3d Cir. 1995); *Rode*, 845 F.2d at 1201 n.6). Further, a plaintiff may not plead in the collective by using the word "Defendants" without specifying which specific defendant engaged in the specific conduct alleged by the plaintiff. *See Lawal v. McDonald*, 546 F. App'x 107, 113 (3d Cir. 2014).

A supervisor may also be liable if he or she "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Barkes*, 766 F.3d at 316 (alteration in original) (quoting *A.M. ex rel. J.M.K.*, 372 F.3d at 586). This type of liability includes a failure to supervise or train, but a plaintiff asserting such a claim must identify the supervisory or training policy the supervisor failed to employ and "then prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory [or

11

training] practice or procedure." *Id.* at 317 (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989); *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001)); *see also Chavarriaga*, 806 F.3d at 227 (citing *Brown*, 269 F.3d at 216).

Hill alleges that Warden Holland is aware of the food safety problem because he "runs" CCP and because eight lawsuits concerning the issue have been filed against CCP, Aramark, and Massey in the last year and a half. (Am. Compl. 13-15.) Hill does not claim that Holland personally participated in the alleged unsanitary food conditions that harmed Hill or that he directed others to violate Hill's rights. *Rode*, 845 F.2d at 1207. Rather, Hill attempts to assert that Holland is liable "'as the person in charge, [who] had knowledge of and acquiesced' in the subordinate's unconstitutional conduct." *Barkes*, 766 F.3d at 316 (quoting *A.M. ex rel. J.M.K.*, 372 F.3d at 586). Ordinarily, it is not enough to merely allege that a defendant is in charge of the involved agency. *Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005) (rejecting plaintiff's hypothesis that a defendant "may have been somehow involved simply because of his position as the head of the [agency]" because it was not "a reasonable inference to be drawn from the facts alleged in [plaintiff's] complaint")). Here, however, the Amended Complaint alleges not only that Warden Holland is in charge, but also that he knew of the issues because eight federal lawsuits have been filed against Aramark, CCP, and Massey in 36 months. (Am. Compl. at 13-15.) It also alleges that Hill filed grievances about the food at CCP and complained to the Prison Society, which apparently visited CCP regarding the problem. (*Id.* at 15, 19.) Moreover, the Amended Complaint alleges that Chester County Health Department visited CCP and distributed a survey in an attempt to identify the problem food(s) causing a "prison wide sickness." (*Id.* at 15.) Taken together and construed liberally, these allegations raise a reasonable inference that

12

Warden Holland had knowledge of the problem and acquiesced in the service of contaminated food to inmates. *See Phillips*, 739 F. App'x at 129 (vacating and remanding for plaintiff's claim to proceed where he alleged that prison officials knew of the excessive risk of serving him non-compliant foods but disregarded that risk). The Fourteenth Amendment claim alleged against Warden Holland will be permitted to proceed.[6]

## IV.   CONCLUSION

The Court will dismiss the claim against the Commonwealth of Pennsylvania with prejudice and dismiss the claims against Jane and John Does without prejudice for failure to state a claim. 28 U.S.C. § 1915(e)(2)(B)(ii). The claims for deliberate indifference under the Fourteenth Amendment will proceed against Aramark, Massey, Warden Holland, and Chester County.

An appropriate Order follows and provides further instructions regarding service.

BY THE COURT:

/s/ John R. Padova, J.

JOHN R. PADOVA, J.

---

[6] To the extent that Hill asserts a claim against the Warden in his official capacity, based on CCP's alleged policies and/or customs concerning the service of meals that compromise inmate safety, his claim is no different than a claim against the County. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). The claim against Chester County will therefore go forward as well.

13